Well, good afternoon. It's just past noon. May it please the court, I would like to reserve two minutes for rebuttal. I'm Michael Sorgan, as Judge Berzon has acknowledged, and with me is my co-counsel Andrea Adam Brott. Because I have so little time, I do want to get right to the point, and that's talking about the decision in Katz v. University of California, which I know that Judge Fischer was on that panel and participated in that. Well, Katz was a case on the merits. This is a case about class actions, certification. Both parties at some point seemed to lose track of that distinction, and it would be most helpful to me if the arguments on both sides focused on that distinction. Okay. Well, that is a distinction between the instant case and Katz, but the judge did rely on Katz to find out, to find, to conclude that the plaintiffs had failed to show disparate impact was caused by the plaintiff's age. And I agree. Do they have to show that at this point, or do they have to show that whatever the answer to that question is, it's a unitary answer for everybody in the class? Well, I think not, Your Honor, and that is a good point. But Katz, of course, does talk about causation. In order to ‑‑ I think Katz is superficially similar because it also involved two groups. In that case, there were two retirement plans, one of which was offered a benefit program and the other one was not. And in this group, there are two eligibility lists. And so ‑‑ but the biggest ‑‑ I'd just like to read a few passages from Katz just to show that it's very different from the instant case. In Katz, the evidence demonstrated that only 238 of 895 employees, roughly 27 percent, were adversely impacted by the university decision. The statistical evidence of disparate impact upon employees age 60 or over is minimal compared to the number of employees of that age group not adversely affected by the university's decision. And the Katz court also noted that many employees over age 60 took the voluntary early retirement incentive program, which was at issue in that case. Then the court held in Katz that the plaintiff had failed to demonstrate causation, which requires substantial statistical evidence sufficient to raise an inference, that the disparate impact fell upon the employees of a protected age group. So ‑‑ but I think that's one very significant difference is what the court has already recognized, that Katz, of course, was appealed after trial, whereas this case is only on the issue of class certification. But with regard to the certification of the class, the statistical evidence in Katz showed a very minimal adverse impact, whereas the statistical evidence here showed that the city's policy of taking the exclusive path to investigative work away from the Q35 people who had chosen that career path and giving it exclusively to the sergeants, the Q50 people, did have an adverse impact on employees over the age of 40. And suppose ‑‑ The impact was about 90 percent? Well, I think it basically ‑‑ the court recognized, and this is at the excerpt of record, page 13, lines 20 to 24, that the statistical impact compared the chance that an employee over 40 would get the ‑‑ to do investigative work, get the promotion to do investigative work, to that of the younger employees. But it seems to me you're ‑‑ Well, I think it was 100 percent. Everybody on the list was over 40. That's right. On the other hand, I mean, once you get to the merits of this case, I think you've got a lot of problems. But the class action issue just seems to be so distinct. And I'm ‑‑ but on the merits, nothing stopped everybody over 40 from taking the qualifying exam, the exam that ‑‑ the sergeant exam, right? Right. But to require them to take that exam just completely ignores the very fact that you'd have to get to business necessity and you'd have a major other set of issues, other than whether your statistics showed a disparate impact unitarily for everybody in the class. Right. That's why I'm hoping that when this Court remands the case to the district court to certify the class, that the Court will also clarify some of the standards to be followed in the court of merits. How can we do that? Because we have a ‑‑ what we have here is a 23F appeal, right? Which was given permission only for the purposes of determining the class, of reviewing the class determination. And if we start getting into the merits, we have ‑‑ we're getting into an interlocutory appeal, which you don't have any right to. Well, Your Honor, with all due respect, the district judge did get into the merits. Well, that may be, and that may be an error. And that may be an error. And then maybe that's ‑‑ and that would be all we need to say. But for us to get into it as well is to exceed the certification on which we accepted this otherwise interlocutory appeal. Well, Your Honor, I guess I have much less to say on this appeal, because it appears clear that there was a disparate, a substantial disparate impact that basically reduced the chance that the over 40 employees would get to do the investigative work. And if you're wrong and you can't make out your case, you lose. Right. But we really can't ‑‑ we have to do this case as a class action for disparate impact. Well, you don't have to do it. But if you did it for each individual, you'd do exactly the same thing in terms of demonstrating the disparate impact. But it would be much more difficult for all the individual employees to separately demonstrate how they individually were harmed by the city's policy. Well, they'd still have to do everything the same. They'd have to demonstrate that there was, in fact, a disparate impact on the group as a whole, because it's an inherently group question. So there wouldn't be very much point, and it does mean that everything, that the whole ‑‑ and it's hard to see why there's not one collective question, but that doesn't tell you the answer to the collective question. Well, most of my argument, frankly, Your Honor, was about the merits and about how the court, I think, exceeded the ‑‑ Well, can you give me any argument at all about how we have authority to reach any of those questions? I'm sorry. Do you have any argument at all about why we have authority to reach any of those questions? No, I don't. But the judge did basically assume that the city's policy was correct and ignore the fact that there was a disparate impact based on age, and ignore the fact that all the people on the Q35 list were qualified, and that they weren't necessarily interested in becoming sergeants, and that even if they'd gotten promoted to be sergeants, that wouldn't have guaranteed that they'd get to do the investigative work, which was the career path that they had chosen. So I think ‑‑ I wish there were a way to explain that. You could have tried to do a, you know, get a certified interlocutory appeal, but you didn't do that. You only have a class action question here. That's right, Your Honor. But, well, we might be back here again then after the remand. Okay. Does the court have any further questions of me? Thank you very much. Good afternoon, Your Honors. May it please the Court. I'm Christine Van Aken for the City and County of San Francisco. Walmart v. Dukes teaches that to certify a class in an employment discrimination case, the plaintiffs must have a common question ‑‑ a common answer to the question, why was I disfavored? No, that's not true. That was a disparate treatment case. It is a disparate ‑‑ The question here is whether there is a common question with regard to the disparate impact that it seems by definition applies to every member of the class because of the way they've described the class. The class is everybody who is on this Q35 class over 40, and everybody in the Q35 class is over 40, and the answer to the question of whether it had a disparate impact is going to be a unitary question. So there is a common question of fact, and the answer may be they lose, but I don't understand how you can say it's not a common question. Your Honor, I respectfully submit that's not correct. In Walmart, there was a common question with respect to the Walmart company policy of giving subjective decision‑making power to managers, but the plaintiffs didn't bear their burden of showing the further step, the merits question, that gender pervaded decision‑making at the company. Because they were trying to demonstrate that gender was the reason for a bunch of individual decisions. That is not what they're trying to prove here. What they're trying to prove here, Your Honor, let's step back and look at the disparate impact claim. In order to state a disparate impact claim, and I understand I am talking about the merits here, but I'm going to tie it into commonality. To state a disparate impact claim, the statistical showing is very specific. You have to look at everybody who is eligible for a particular promotion and identify the number of people in a protected class in that group, and then look at the people who got the benefit that they wanted, and identify the number of people in the protected group from that class. All the plaintiffs have done here is they've sliced and diced the statistics so that their eligible pool artificially becomes a group of people who are over 40. Sotomayor, and so therefore, if they're wrong, they lose. If they are ‑‑but the analysis that the district court will have to undertake if this court orders that the class be certified and it goes on remand, then what the city is going to be presenting is going to be individual circumstances about each person, each of the named plaintiffs and the people in the class, did they take the sergeant exam, how did they score on the sergeant exam, and had the city decided to fulfill assistant inspector positions, would it have used the 1998? ‑‑Once you get to that, they've lost their disparate impact claim the way they have phrased it. In other words, they have ‑‑their essential contention is that because they're ‑‑everybody on this list is over 40 and because they ‑‑ if they hadn't been a discrete new policy, one new policy, they would have gotten a job, that's the end they win. And your answer is, no, it's not the end they lose. Why isn't that a unitary question with a unitary answer? Because, Your Honor, they would still be claiming that we should have gotten this promotion. And in looking at whether they should have gotten this promotion, the city will be presenting ‑‑ Well, then they're switching gears because the only argument they're making is they should have gotten the promotion because they're on the Q35 list and for no other reason. And your answer is, no, that's wrong, and you may well prevail. Your Honor, the plaintiffs in Wal-Mart also were arguing that a CLASH should be certified because they had a common ‑‑ because the company ‑‑ But it couldn't point to any common ‑‑ their only common policy was a lack of a common policy. Their common policy was subjective decision‑making vested in each individual unit. And therefore, people were making decisions based on race. They're not arguing here that anybody was making a decision based on race. There wasn't a common policy in Wal-Mart. There were supervisors or policies all over. Here there's just one policy‑making group. I don't see where Wal-Mart helps you. There was a common policy of granting subjective decision‑making. There was a common policy of deferring, delegating to all of the hundreds of Wal-Mart supervisors all over. You say potato, I say potato. Yes, Your Honor. Which is a little different than what we have here. Your Honor, the common question, just the Wal-Mart decision says that any intelligent plaintiff's lawyer can articulate a commonality, but that's not enough. You have to test that commonality against the standards of the law. And to do that, you sometimes have to look at the merits. Here, to state a disparate impact claim, they have to show a common ‑‑ a pool of people who were disfavored, who were eligible but were disfavored. They've sliced and diced that pool to take a small number of people who were eligible for something different. Well, taking the small group, you're talking about Q35, right? Yes. People on the assistant inspectors list. Is it true that 100 percent of those people are affected by this policy? No, Your Honor. What percent are? We don't know because we don't ‑‑ I don't know how many people in that class took the Sargent exam. And you don't know either whether or not they're eligible to be due investigation. Why weren't those determinations made at the trial level? Well, all that was facing the trial court here was a decision whether to certify this class or not. And the ultimate merits of this case, of whether ‑‑ Title VII and the age discrimination laws are about removing barriers to employment. Here, all of the members of the class are differently situated with respect to the barrier. Well, all of them are old. We got that part, right? Yes, but they are only a small subset of the number of people over 40 in the department. No, we're talking about Q35. Yes, but what I'm saying is that that is an artificial way. That is not the number of people who were eligible for promotion. So you wanted them to take the entire police force? That's who was eligible, the entire police force, the Q2 rank and file police officers. Well, if a child in Q35 went into this particular line, which they're eligible to do, now that they're in there, they're going to be disadvantaged, all because of their age. No, Your Honor, that's not true. Had the department known in 2005 that it had to appoint, that it couldn't appoint sergeants to do investigative work, the testimony is that it wouldn't have gone ahead and promoted people from a list that was 8 years old where everyone left on the list for what I would call a business necessity or something like a defense to do. First of all, there's a question of is there a disparate impact as to this group, which it seems to me is questionable for the reasons you're saying, but there's a unitary answer. There's one answer. There either is or isn't, as to everybody in this group, a disparate impact. Now, it could be that the answer is no, there isn't a disparate impact because of the reasons you're stating. That is, you should be looking at a larger pool, you should be considering everybody over 40, you should be considering those people who did go and take the test separately, all of which would go to say you lose, there's no disparate impact. The second possibility is even if there is a disparate impact, there was a damn good reason for doing this, which you've explained at some length, and so therefore there's a business necessity, whatever the phrase is under the FEHA, which I don't know, but a business reason for doing it. So you win and they lose for that reason. But there's only one answer. That's what's different from this in Walmart. Your Honor, in the Ellis case, the Court repeated, in Ellis v. Costco, you look at whether they were all they all lost access to the opportunity for the same reason. But I respectfully submit they did not, Your Honor. They had they were on a list of assistant inspectors. The Department did not promote any assistant inspectors during the time period. The Department promoted sergeants. So to say they didn't, they were not in fact barred, so therefore they lose. No, they do not have the same barrier. Some of them could, some of them took the sergeant's test. Okay. But that's, they still had a barrier, i.e., they had to take a test that otherwise they wouldn't have had to take. And they would have had to be eligible for a job they didn't actually want. So that's right there a barrier. Right. The Department didn't fill the jobs they wanted them to fill. But that's like saying, we didn't have to fill the job, you lose. All of you. Right. But I think that Walmart authorizes you to look ahead, to take a peek at the merits and to say, what does the law say about what the barrier needs to be, about the barrier that they have to show? Are they similar? But the Amgen opinion, isn't it pretty clear in a circumstance more like this? I'm sorry, Your Honor. I didn't ask. The Amgen opinion in the Supreme Court. Your Honor, I'm sorry. I'm not familiar with that. You're not? That hurts. Maybe I mispronounced. Yes. I apologize. I must be mispronouncing it. Just a minute. Amgen. Yes. Yes. Yes. Yeah. I think that, yeah, I'm sorry. I can't answer that question. The issue is whether they are similarly situated with respect to the barrier to the employment that they were seeking. And Walmart teaches that we look to the merits. We look to what the barrier actually was. Was it simply a subjective policy of letting every manager decide? Or was there actual evidence that gender pervaded decision making at Walmart? Here the analogy is, do we look simply to evidence that this group of people had to take another test in order to compete for a job, or do we measure their class against what the law actually is? Here the law says that we have to have a disparate impact of everybody who was eligible for a particular promotion. So they lose because they didn't make out a disparate impact among the correct group of people. So you go back, we have a class, the class loses, all of it, the whole class. Right. Right. So what's the problem? Well, you know, Your Honor, at the end of the day for the city, I don't think there's a problem. I think that on the merits, our claims are meritorious. But, you know, the class device protects people from having bad claims adjudicated in a way that's going to be binding on them for now and forever. So I think that, you know, there's a reason why courts take an active role and why a rigorous analysis is required, because this is what, you know, you're adjudicating the rights of people who are not before the court, who haven't filed. You've told us why this is wrong. Why don't you tell us what you think the class should have been? If plaintiffs could have certified a class of people who took the sergeant's exam and did not receive promotion to sergeant because of their age, that is a common question. Well, that's a common question, but all of them didn't want to be sergeants. Some of them wanted to be investigators. And, you know, San Francisco is entitled to appoint sergeants. That's like saying ---- And isn't it true that Q35 was used for sergeants and not sergeants, but investigators and assistants? It had been used in the past, yes, for assistants. Q35 was used to promote ---- So you're in this group moving along, and you've got your careers up ahead of you here, and you're going to become an assistant or you're going to become an investigator. Then a new group comes out here. This group has been disadvantaged. They're in the wrong group all of a sudden. Your Honor, they're not. They could ---- The Department continued to appoint Q35 assistant inspectors later on, but only after giving a new test.  No, investigators, yes. This position. Not sergeants? The Q ---- In 2007 and 2008, the Department appointed sergeants. In 2009 or ---- sorry, in 2010, it again appointed assistant inspectors from the Q35 list, but it gave a new test. And so ---- and plaintiffs don't object to the fact that they gave a new test, even though giving a new test has exactly the same statistical impact on the number of people eligible for promotion as giving a new test. And with investigators, they give a new test? So there's no category known as investigators. People are assigned to tasks that may be more investigative or more supervisory or more, but there's not a category of job. There's a category of job called assistant inspector, and there's a category of job called sergeant. And the Department's policy is to give new exams frequently so that people who've joined the Department ---- Current policy. Sorry, what's that? The current policy. It actually was the policy at the time as well. The list that these plaintiffs were on, the 1998 list, was supposed to be in effect for only ---- it states at the top of the list. It's effective for four years. Now, for whatever reason, the Department just sort of didn't get it together to give a new test. And so what they had was this 1998 list where everybody left on the list had scored in the bottom half of the exam. And the Civil Service Commission, actually, when they say, you know, these were out-of-class appointments that you were making for sergeant, they also say, this was a really stale list. It's our policy to give frequent exams so that people who join the Department have a chance to move up. But what Amgen says, and I'm sort of shocked that you're not familiar with it because it seems to me to be the single most pertinent case, but in any event, it dealt with the question of alleging materiality in a ---- and it was actually a B-3, not even an A-2. But in any event, it says, ''Instead, what Amgen alleges is a fatal similarity, an alleged failure of proof as to an element of the plaintiff's cause of action. Such a contention is properly addressed at the trial or in a ruling on summary judgment.'' In other words, everybody might lose because the ---- they have a fatal flaw in their argument, but that doesn't mean you address it now. Your Honor, in Wal-Mart, the plaintiffs also had they the Wal-Mart court says there was a company policy of giving individual decision-making power. And so ---- You're using, in a, if I remember my case law, Teamster sort of way as a policy or practice which would then switch the burden of proof as to a bunch of individual cases about disparate treatment. Yes, Your Honor. That's not what's going on here. Everybody wins or everybody loses here. There's no indication in Wal-Mart, though, that it's, that it's, that it's isolated to a pattern and practice case. Of course it was. It was a pattern and practice case. I agree with that, yes. But the court is saying you have to look at, you look ahead to see what are you going to be proving at trial, what are you going to be. So what are you going to be proving at trial here other than either there was or wasn't a disparate impact. They either did have the right group or they had the wrong group in terms of their statistics. And you either do or you don't have a business necessity for that policy, but there is a disparate impact. What else are you going to prove here? The city will be putting on evidence of the sergeant's exam, whether plaintiffs took it or whether they didn't take it, and whether they scored highly enough to receive those promotions. That is all individual evidence. And essentially, because you're going to say there wasn't a disparate impact, in fact, because you're looking at the wrong group. Yes. You're looking at the wrong group. So then they lose. I just can't get myself to see any other problem here. Every disparate impact case will fail. We'll win it. We are confident we'll win at the end of the day, but we also submit the district court did not abuse its discretion. Thank you very much. Thank you, Your Honor. Mr. Sorkin. I think I'll take the two minutes anyway. I was prepared to talk about Amgen because I was concerned that the judge had just done the merits using this, incanting this mantra from Walmart about, you know, rigorous analysis and it necessarily overlaps with the merits. Amgen is a Supreme Court case, 133S, Court 1184, and it basically said that Rule 23 grants courts no license to engage in free-ranging merit inquiries at the certification stage. Merits questions may not be considered to the extent, may be considered to the extent, but only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. And so the Court is well aware of that rule. And I think Walmart, I think the Court is pretty well aware that Walmart is a very different case from this one. This is a single employer. We identified a single policy. And the single policy was simply to take away the exclusive path to a career as an assistant inspector or as an investigator from the Q35 group and give it to the sergeants. And then whether that caused a disparate impact or whether the policy of the city was a substantial factor in causing the disparate impact based on age is all we'd really have to show under FEHA. So I just think that that's a quid pro quo. And our disparate impact does show that it affected 100 percent of the Q35 people. They were qualified and they were eligible. And the Civil Service Commission said they could have been appointed. And moreover, the Civil Service Commission said that the sergeants were working out of mandated investigative work and that the specifications for sergeants had to be changed and amended so that they would include the skills, knowledge, and abilities for the investigative work, which the city subsequently did in 2009. And then beginning in 2010, they appointed investigators and assistant inspectors from both groups. So it's safe to say here that the discrimination we're talking about occurred in the period 2007 to 2009, and but it unfortunately, it caused a disparate impact based on age. Thank you. Kagan. Thank you both very much. The case of Stockwell v. Sidding County of San Francisco is submitted. And we are in recess. Thank you.
judges: Wallace, Fisher, Berzon